UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RAMON CALDWELL, JR.,

                Petitioner,

                                     Case No. 1:22-cv-700

v.

                                     Hon. Hala Y. Jarbou

BRYAN MORRISON,

                Respondent.

_____/

## <u>OPINION</u>

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Ramon Caldwell, Jr. is incarcerated with the Michigan Department of Corrections at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. On June 16, 2016, following a three-day jury trial in the Cass County Circuit Court, Petitioner was convicted of criminal sexual conduct-assault with intent to commit sexual penetration (CSC-assault), in violation of Mich. Comp. Laws § 750.520g, first-degree home invasion, in violation of Mich. Comp. Laws § 750.110a, and indecent exposure, in violation of Mich. Comp. Laws § 750.335a. On August 5, 2016, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to prison terms of 8 to 30 years for CSC-assault, 18 to 30 years for home invasion, and 363 days for indecent exposure.[1]

On July 29, 2022, Petitioner filed his initial habeas corpus petition in the United States District Court for the Eastern District of Michigan. (ECF No. 1.) In an opinion and order (ECF

_____

[1] Petitioner has completed serving his sentence for indecent exposure and is no longer in custody pursuant to that conviction.

No. 3) entered on August 2, 2022, the Eastern District transferred the matter to this Court for further proceedings. Petitioner's petition asserts the following four grounds for relief:

I.    Improper Admission of Evidence. The trial court abused its discretion admitting 404(b) evidence without "Pretrial Notice" that was not excused on "good cause" shown. Using a "res gestae" witness list exception and failing to perform the required MRE 403 balancing test.

II.   Prosecution Argued Facts not in Evidence. The prosecution argued facts not in evidence on three (3) separate occasions during closing arguments. Defendant objected to the first instance, yet the prosecution continued to do so, two more times.

III.  Prosecutorial Misconduct. The prosecutor committed misconduct during trial, and closing arguments that deprived Defendant of Due Process right to a fair trial. Using blatant, and egregious remarks that painted Defendant in a horrible light Along with Al[a]na Young, his girlfriend at the time.

IV.   Ineffective Assistance of Appellate Counsel &, Ineffective Assistance of Trial Counsel. Appellate Counsel was ineffective when arguing on Direct Appeal the wrong issues. Causing Defendant to Waive[] this issue and having to file a 6.500 motion. Nor did Appellate Counsel raise the Ineffective Assistance of trial counsel claim.

      Trial counsel was Ineffective when failing to introduce to the jury phone recordings from county jail. Also when objecting to "no evidence", admitted at trial when he should have objected to the "Arguing facts in-Evidence". Further when advising defendant to "lie under oath" regarding past crimes.

(Pet., ECF No. 1, PageID.5–10.)[2] Respondent asserts that Petitioner's grounds for relief are

---

[2] After the Court entered an order (ECF No. 10) directing Respondent to file the state court record and a response to the petition, Petitioner moved for leave to amend his habeas petition (ECF No. 11). That motion was initially denied on October 25, 2022. (ECF No. 13.) Petitioner filed an objection (ECF No. 14), and in an order (ECF No. 17) entered on December 15, 2022, the Court directed Petitioner to file a proposed amended petition. Petitioner filed his proposed amended petition on January 10, 2023, purporting to add three new grounds to his initial petition. (ECF No. 18.) In an order (ECF No. 21) entered on February 7, 2023, the Court denied Petitioner leave to amend his petition to assert the proposed three new grounds for relief because those grounds were unexhausted, untimely, and meritless.

meritless.[3] (ECF No. 23.) The Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

<u>Discussion</u>

## I.     Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> BW[, the victim,] testified that, at approximately 4:00 a.m. on August 9, 2015, she was awakened by a tap on her shoulder. BW heard someone say her name, and she then saw [Petitioner], whom she recognized as the man dating her brother's ex-wife, standing near her bedroom door. Because [Petitioner] was not wearing any pants, BW could see his genitals. BW got out of bed, kicked [Petitioner] in the groin, and ran screaming from her bedroom. BW's screams awakened her mother, who came running into the hall. [Petitioner] fled to the bathroom, and exited the house through the bathroom window. BW called the police. When BW and her mother went into the bathroom, they saw that bottles of soap and shampoo that were kept on the windowsill were not there. Police found [Petitioner] less than a mile from BW's home, intoxicated and sleeping in his car. BW identified [Petitioner] as the man who entered her home, and items from the bathroom were found in [Petitioner's] vehicle. In addition to facts surrounding the events at BW's home, the prosecutor also offered evidence that in 2003 defendant committed a similar home invasion with intent to sexually assault WAB.
>
> At trial, [Petitioner] admitted that he went to BW's house, removed his pants, and exited via the bathroom window, but he claimed that BW had invited him to the house for consensual sex. The defense theory at trial was that BW invited [Petitioner] over to have sex and/or to frame [Petitioner] for attempted rape to aid

---

[3] Respondent also contends that Petitioner's prosecutorial misconduct claims are procedurally defaulted. (ECF No. 23, PageID.348.) However, a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *see also Overton v. Macauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix*, 520 U.S. at 525; *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). Here, rather than conduct a lengthy inquiry into procedural default, judicial economy favors proceeding directly to a discussion of the merits of Petitioner's claims.

> BW's brother in his custody dispute with his ex-wife. [Petitioner] denied the other-acts evidence involving WAB and denied ever harming any woman. The jury convicted [Petitioner] as noted above.

*People v. Caldwell*, No. 334322, 2017 WL 5503781, at *1 (Mich. Ct. App. Nov. 16, 2017). "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted).

Jury selection for Petitioner's trial occurred on June 14, 2016. (Trial Tr. I, ECF No. 25-8.) Over the course of three days, the jury heard testimony from numerous witnesses, including law enforcement officers, BW, WAB, BW's mother, a friend of Petitioner's, Petitioner's neighbor, Petitioner's fiancée, and Petitioner himself. (Trial Tr. I, II, & III, ECF Nos. 25-8, 25-9, 25-10.) On June 16, 2016, after about two hours of deliberation, the jury reached a guilty verdict. (Trial Tr. III, ECF No. 25-10, PageID.1101.) Petitioner appeared before the trial court for sentencing on August 5, 2016. (ECF No. 25-11.)

Petitioner, with the assistance of counsel, appealed his convictions and sentences to the Michigan Court of Appeals, asserting the following claims for relief: (1) his two convictions and sentences for first-degree home invasion violated double jeopardy; (2) the prosecutor committed error by arguing facts not in evidence; and (3) the trial court erred in scoring certain prior record variables (PRVs) and offense variables (OVs). In a *pro per* supplemental brief, Petitioner raised the following additional claims for relief: (1) the trial court erred by admitting evidence of WAB's assault; (2) the trial court erred by allowing the prosecution to impeach Petitioner with evidence of his prior convictions; (3) the prosecutor made improper remarks during closing arguments; (4) the prosecutor erred by allowing the jurors to view and read text messages that were not admitted into evidence; (5) the prosecutor acted belligerently when questioning witnesses; (6) the prosecutor was predisposed to find Petitioner guilty; and (7) Petitioner's right of confrontation was violated. *See generally Caldwell*, 2017 WL 5503781.

On appeal, the prosecution conceded error with respect to Petitioner's double jeopardy argument, and the court of appeals agreed. *Id.* at *1. The court of appeals remanded the matter for the trial court to vacate one of Petitioner's convictions and sentences for first-degree home invasion and to modify the judgment to note that Petitioner's remaining conviction and sentence for first-degree home invasion "is for one count supported by two theories." *Id.* The court of appeals rejected all of Petitioner's other grounds for relief. *Id.* at *1. The Michigan Supreme Court denied Petitioner's application for leave to appeal on September 12, 2018. *People v. Caldwell*, 917 N.W.2d 63 (Mich. 2018).

On November 15, 2019, Petitioner filed a motion for relief from judgment pursuant to Michigan Court Rule 6.500, asserting the ineffective assistance of appellate and trial counsel claims that Petitioner now raises as habeas ground IV. (ECF No. 25-12.) On March 23, 2021, the trial court denied Petitioner's Rule 6.500 motion. (ECF No. 25-14.) The court of appeals and the supreme court denied Petitioner's applications for leave to appeal on January 3, 2022, and June 28, 2022, respectively. (ECF Nos. 25-17, PageID.1416; ECF No. 25-19, PageID.1730.) This § 2254 petition followed.

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "[I]f a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits." *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's

claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example,

if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d

at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d

433, 436 (6th Cir. 2003)).

## III.  Discussion

### A.  Ground I—Admission of 404(b) Evidence

Petitioner first asserts that the trial court abused its discretion by admitting "prior bad acts"

evidence, pursuant to Michigan Rule of Evidence 404(b), without "pretrial notice." (Pet., ECF No.

1, PageID.5.) According to Petitioner, the trial court permitted the prosecution to present WAB's

testimony even though Petitioner did not receive notice of such in advance of trial. (*Id.*,

PageID.27.) Petitioner faults the trial court for "using the reason of the '[r]es [g]estae' witness list

exception," suggesting that no such exception applies to Rule 404(b). (*Id.*)

Petitioner raised this ground for relief in his *pro per* supplemental brief filed in the

Michigan Court of Appeals. *See Caldwell*, 2017 WL 5503781, at *4. The court of appeals agreed

with Petitioner that the trial court failed to correctly apply Rule 404(b)(2) because the trial court

failed to consider whether the prosecutor's failure to provide pretrial notice of WAB's testimony

should be excused "on good cause shown." *Id.* The court of appeals, however, determined that the

error was not outcome determinative, stating:

> When a trial court commits a preserved, nonconstitutional error, the error is
> presumed not to be a ground for reversal unless it affirmatively appears that the
> error, more probably than not, was outcome determinative. *People v. Douglas*, 496
> Mich. 557, 566; 852 N.W.2d 587 (2014). The trial court's failure to apply MRE
> 404(b)(2) did not result in outcome-determinative prejudice to [Petitioner]. *See
> People v. Jackson*, 498 Mich. 246, 278–280; 869 N.W.2d 253 (2015). As will be
> discussed, the other-acts evidence was substantively admissible under MRE 404(b).
> Thus, the trial court's failure to apply MRE 404(b)(2) did not result in the admission
> of substantively improper other-acts evidence, and although [Petitioner] was denied
> an opportunity before trial to marshal arguments against admission of the other-
> acts evidence, [Petitioner] has not shown that any successful arguments were

available to him. Additionally, the prosecutor's notice of intent to introduce other-acts evidence could not have been a complete surprise to [Petitioner]. The prosecutor had named WAB on his witness list, and [Petitioner], because he had pleaded guilty to charges arising from the assault on WAB, would have generally been aware of WAB's version of the 2003 assault. Furthermore, [Petitioner] has made no argument that he would have approached trial or presented his defense any differently had he received pretrial notice of the other-acts evidence. [Petitioner] has not claimed that pretrial notice would have caused him to alter or abandon his defense of consent or would have led him to present any additional witnesses. Under these circumstances, the trial court's failure to apply MRE 404(b)(2) was not outcome determinative. *See Jackson*, 498 Mich. at 278–280.

*Caldwell*, 2017 WL 5503781, at *4. The court of appeals went on to conclude that WAB's testimony was admissible under Rule 404(b) "to show [Petitioner's] intent and common scheme or plan." *Id.* at *5. The court of appeals noted that "[Petitioner's] assault of BW and his assault of WAB contained common features beyond the mere commission of a sexual assault of a woman." *Id.* The court of appeals stated further that WAB's testimony was "of significant probative value" because it was "relevant to determine whether the charged acts occurred, as well as [Petitioner's] intent." *Id.*

As noted above, Petitioner suggests that his trial was rendered unfair—and, therefore, violative of his due process rights—because the trial court erred in its determination that WAB's testimony was admissible under Rule 404(b). However, the extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. Thus, to the extent that Petitioner asserts that the state courts erred under Michigan law, he fails to state a claim upon which habeas relief may be granted. State courts

9

are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

It is not inconceivable that evidence properly admitted under state law might still have the effect of rendering Petitioner's trial unfair. However, "state-court evidentiary rulings cannot rise to the level of due process violations unless they offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (internal quotation marks omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

Further, under the AEDPA, this Court may not grant relief if it would have decided the evidentiary question differently. This Court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "a Supreme Court case establishing a due process right with regard to the specific kind of evidence at issue").

Here, Petitioner fails to identify any clearly established Supreme Court precedent that would preclude admission of WAB's testimony. Indeed, there is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of "other bad acts" evidence. In *Estelle*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S.

at 75. The Court stated in a footnote that because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. "Likewise, there is no clearly established Supreme Court precedent requiring a prosecutor to provide notice of such evidence before presenting it at trial." *Hill v. Palmer*, No. 1:18-cv-216, 2018 WL 1406845, at *5 (W.D. Mich. Mar. 21, 2018).

Thus, because there is no clearly established federal law holding that admission of "prior bad acts" or propensity evidence and that failure to provide notice of such evidence before presenting it at trial violates due process, Petitioner cannot demonstrate that the court of appeals' rejection of his claim concerning the admission of WAB's testimony is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief with respect to habeas ground I.

### B.     Grounds II and III—Prosecutorial Misconduct

In habeas grounds II and III, Petitioner suggests that his due process rights were violated when the prosecutor committed misconduct.

For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he

11

touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In evaluating the impact of the prosecutor's misconduct, a court should consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner. *See United States v. Young*, 470 U.S. 1, 11– 12 (1985). The Supreme Court has described the *Darden* standard as "a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012). The *Parker* Court rejected an attempt to graft any additional requirements on the "very general" *Darden* standard.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. 637, 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker*, 567 U.S. at 47 (internal quotation marks omitted).

### 1.    Ground II—Arguing Facts Not in Evidence

As habeas ground II, Petitioner faults the prosecution for arguing facts that were not in evidence on three separate occasions during closing arguments. (Pet., ECF No. 1, PageID.7.) Specifically, Petitioner avers that the prosecutor argued facts not in evidence during closing arguments when the prosecutor stated that Petitioner said, in a phone call made from jail, "I sure hope they don't fingerprint that door." (*Id.*, PageID.49, 50–53.)

12

Petitioner raised this argument on direct appeal, and the court of appeals thoroughly addressed it. First, the court of appeals noted that Petitioner's argument that the prosecutor argued facts not in evidence differed from the objection on the basis of "no evidence" regarding Petitioner's jail phone calls made at trial. *See Caldwell*, 2017 WL 5503781, at *2. Nevertheless, the court of appeals reviewed Petitioner's unpreserved claim for plain error. *Id.* The court of appeals agreed that the prosecution committed error, but that such error did not affect the outcome of Petitioner's trial. Specifically, the court of appeals stated:

> The test for prosecutorial error is whether the defendant was denied a fair and impartial trial. *People v. Mesik (On Reconsideration)*, 285 Mich. App. 535, 541; 775 N.W.2d 857 (2009). A prosecutor may argue reasonable inferences from the evidence, but a prosecutor may not argue facts not in evidence or mischaracterize the evidence presented. *People v. Watson*, 245 Mich. App. 572, 588; 629 N.W.2d 411 (2001).
>
> As [the State] concedes, the prosecutor argued facts not in evidence when he remarked that [Petitioner] said in a phone call from jail that he hoped the police did not fingerprint the door. Although Deputy Ryan Shields testified that [Petitioner], in his phone calls from jail, mentioned that his fingerprints should be on the door, Deputy Shields did not testify, and neither did Deputy David Nevins or [Petitioner], that [Petitioner] said that he hoped the police did not fingerprint the door. The prosecutor committed error that was clear or obvious. *People v. Carines*, 460 Mich. 750, 763; 597 N.W.2d 130 (1999).
>
> However, the prosecutor's error did not affect [Petitioner's] substantial rights. *Cooper*, 309 Mich. App. at 88. Immediately after the prosecutor remarked that [Petitioner] said in the jail phone calls that he hoped the police did not fingerprint the door, in response to [Petitioner's] objection, the trial court instructed the jury that they were "to rely on their memories about the facts." Then, in final instructions, the trial court instructed the jury that it could only consider the evidence that was properly admitted, and that the lawyers' statements and arguments were not evidence. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v. Abraham*, 256 Mich. App. 265, 279; 662 N.W.2d 836 (2003). Additionally, the evidence against [Petitioner] was substantial. BW identified [Petitioner] as the partially undressed man who tapped her on her shoulder in the middle of the night in her bedroom; BW's mother testified that she had never seen BW as afraid as BW was that night; Deputy Nevins testified that BW, upon seeing [Petitioner] in his vehicle, wanted to get away from him immediately; bottles of shampoo and soap from the bathroom in BW's house were found in [Petitioner's] vehicle; [Petitioner] told Deputy Nevins that he had not been at BW's house, but then later claimed that he had been invited in by BW;

13

and, in a similar case, [Petitioner] broke into WAB's house and woke her in the middle of the night, telling her that he was going to "stick [his] dick" in her. Based on the trial court's instructions and the strong evidence of [Petitioner's] guilt, the prosecutor's error did not affect the outcome of the proceedings. *Carines*, 460 Mich. at 763.

*Caldwell*, 2017 WL 5503781, at *2.

"[T]he government may not rely on prejudicial facts not in evidence when making its closing arguments." *United States v. Roach*, 502 F.3d 425, 434 (6th Cir. 2007). Here, although the court of appeals concluded that the prosecutor's comments were improper, Petitioner fails to show that the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643). Under Michigan harmless error jurisprudence, unpreserved nonstructural constitutional error is reviewed under a plain error standard. *People v. Cornell*, 646 N.W.2d 127, 142–43 (Mich. 2002); *People v. Carines*, 597 N.W.2d 130, 143 (Mich. 1999). To prevail, the defendant must show "a plain error that affected substantial rights." *Carines*, 597 N.W.2d at 143. The Michigan Supreme Court assesses whether the error affected the outcome of the proceeding to determine whether the defendant has made the necessary showing. *People v. Davis*, 983 N.W.2d 325, 336–337 (Mich. 2022) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). That is "the same kind of inquiry" the Michigan courts use to determine whether error is harmless: was it "outcome-determinative." *Id.* The Michigan Supreme Court equates "outcome determination" to "prejudice" when separating plain from harmless error, *People v. Vaughn*, 821 N.W.2d 288, 303 (Mich. 2012), and when evaluating the *Strickland* standard for ineffective assistance of counsel, *People v. Harris*, 840 N.W.2d 307, 308 (Mich. 2013).

The impact of an error on the outcome of the proceedings is also the focus of federal harmless error analysis. *See, e.g.*, *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (adopting as the standard for determining whether habeas relief if appropriate "whether the . . . error 'had

substantial and injurious effect or influence in determining the jury's verdict.'"); *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (posing the question as "Do I, the judge, think that the error substantially influenced the jury's decision?"); *Brown v. Davenport*, 596 U.S. 118, 126 (2022) (stating that "a state prisoner . . . must show that the error had a 'substantial and injurious effect or influence' on the outcome of his trial" (quoting *Brecht*, 507 U.S. at 637)). The appellate court's decision that the error was not outcome determinative is the equivalent of a determination that the error was harmless under *Brecht*. *Kyles v. Whitley*, 514 U.S. 419, 435–36 (1995).

*Brown* states that "a state court's harmless-error determination qualifies as an adjudication on the merits under AEDPA." 596 U.S. at 127. Accordingly, the Court must defer to that adjudication under § 2254(d)(1) unless the "petitioner persuades [the Court] that no 'fairminded juris[t]' could reach the state court's conclusion under [the Supreme] Court's precedents." *Id.* at 1525 (quoting *Davis v. Ayala*, 576 U.S. 257, 269 (2015)). This is a standard that is intentionally difficult to meet. *See Woods*, 575 U.S. at 316.

In his petition, Petitioner asserts that the evidence against him was "not substantially overwhelming" because the defense presented witnesses who testified that BW and Petitioner knew each other, and that Petitioner had been to BW's house before. (Pet., ECF No. 1, PageID.58.) Petitioner argues that his defense was premised upon a theory of BW's consent, and that any fingerprints found on the door would have tied into that theory. (*Id.*) By convicting Petitioner, however, the jury presumably rejected Petitioner's theory of consent. Petitioner provides no argument suggesting that no fairminded jurist could come to the conclusion reached by the court of appeals under Supreme Court precedent. Petitioner simply fails to demonstrate that the prosecutor's error had a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht*, 507 U.S. at 637, particularly in light of evidence admitted at trial that BW had

identified Petitioner as the partially undressed man in her bedroom, that bottles of shampoo and soap from BW's bathroom were found in Petitioner's vehicle, that Petitioner told conflicting stories about the night in question, and that Petitioner had previously assaulted WAB in a similar manner.

Given Petitioner's failure to persuade the Court that no fairminded jurist could reach the conclusion arrived at by the court of appeals, the Court will defer to the court of appeals' determination. The Court's deference to the court of appeals' determination that any error was not outcome determinative necessarily leads to a conclusion that Petitioner has failed to demonstrate that the court of appeals' rejection of this claim of prosecutorial misconduct is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to habeas ground II.

### 2.   Ground III—Disparaging Remarks

As habeas ground III, Petitioner argues that the prosecutor used "blatant[] and egregious remarks" during trial and closing arguments that "painted [Petitioner] in a horrible light[,] [a]long with Alana Young, his girlfriend at the time." (Pet., ECF No. 1, PageID.8.) Specifically, Petitioner asserts that the prosecutor: (1) referred to Young as a "pimp"; (2) called out Petitioner for having "crocodile tears"; and (3) improperly vouched for BW's credibility during closing arguments. (*Id.*, PageID.63.)

### a.   Referring to Young as a "Pimp"

Petitioner first faults the prosecutor for referring to Young as a "pimp" during closing arguments. A review of the transcript indicates that the prosecutor referred to Young as a "pimp" when discussing testimony that Young and Petitioner were trying to get BW involved in a threesome. (Trial Tr. III, ECF No. 25-10, PageID.1028.)

Petitioner raised this claim on direct appeal, and the court of appeals rejected it, stating:

> In his Standard 4 brief, [Petitioner] also argues that the prosecutor made several improper remarks during his closing argument. [Petitioner] fails to provide any citations to the record to support his claim, meaning that his arguments need not be considered. *Petri*, 279 Mich. App. at 413. Even if we overlooked this deficiency, upon reviewing the prosecutor's closing argument and closing rebuttal argument, it is apparent that the prosecutor only made one of the alleged improper remarks, which was calling [Petitioner's] girlfriend, Alana Young, a "pimp." Because [Petitioner] did not object to the prosecutor's characterization of Young, the claim of prosecutorial error is unpreserved, *Bennett*, 290 Mich. App. at 475, and we review it for plain error affecting [Petitioner's] substantial rights, *Cooper*, 309 Mich. App. at 88. A prosecutor has wide latitude in arguing the facts and reasonable inferences arising from the evidence, and need not confine argument to the blandest terms possible. *People v. Dobek*, 274 Mich. App. 58, 66; 732 N.W.2d 546 (2007). Evidence supported the prosecution's characterization of Young as a pimp. BW testified that Young asked her to have a threesome with Young and [Petitioner]. Similarly, Young testified that she tried to convince BW to have a threesome with her and [Petitioner] and that there was talk of paying BW for sex. Accordingly, the prosecutor did not engage in any error when he referred to Young as a pimp. *Cooper*, 309 Mich. App. at 88.

*Caldwell*, 2017 WL 5503781, at *7.

Here, Petitioner merely reiterates the arguments he made on direct appeal and asserts that the prosecution's characterization of Young was egregious. He suggests that the characterization of Young as a "pimp" was improper because "pimps are in the business of making [money], not paying out $200 for a consensual engagement, by way of a threesome." (Pet., ECF No. 1, PageID.63.) However, "[a] prosecutor has 'leeway to argue reasonable inferences from the evidence' during closing arguments." *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011) (quoting *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000)). That is exactly what the prosecutor in Petitioner's case did. Petitioner offers nothing to indicate that the court of appeals strayed from clearly established federal law in rejecting this claim. Under the circumstances, Petitioner has not demonstrated that the prosecutor's characterization of Young "so infected the trial with unfairness" that he was denied due process. *See Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643). Petitioner, therefore, is not entitled to relief with respect to this assertion of prosecutorial misconduct.

### b. "Crocodile Tears"

Petitioner next faults the prosecutor for characterizing Petitioner as having "crocodile tears" during his testimony. During closing arguments, the prosecutor suggested, on a few occasions, that Petitioner had displayed "crocodile tears" or "alligator tears" to garner sympathy with the jury. (*See, e.g.*, Trial Tr. III, ECF No. 25-10, PageID.1027.)

Petitioner raised his claim regarding the prosecution's use of the terms "crocodile tears" and "alligator tears" in his *pro per* supplemental brief as part of his argument that the prosecutor made improper remarks during closing arguments. (ECF No. 25-16, PageID.1353.) Although the court of appeals did not expressly address the prosecutor's use of these terms, the court of appeals' opinion regarding this claim, as set forth *supra*, suggests that the court of appeals did not find the prosecutor's use of these terms improper. *See Caldwell*, 2017 WL 5503781, at *7.

Nevertheless, upon consideration of the record, this Court concludes that the prosecutor committed no error by referring to Petitioner as displaying "crocodile tears," as that was a reasonable inference for the prosecutor to make given the evidence presented against Petitioner. *See Crosgrove*, 637 F.3d at 664 (quoting *Byrd*, 209 F.3d at 535); *see also Simpson v. Bell*, 557 F. Supp. 3d 365, 380-81 (E.D.N.Y. 2021) (rejecting habeas petitioner's claim of prosecutorial misconduct that the prosecutor "denigrated him personally by describing his remorse as 'crocodile tears'"); *Lewis v. Chappell*, No. LA CV11-06395 JAK, 2014 WL 12853210, at *18 (C.D. Cal. Aug. 27, 2014) (same). Under the circumstances, Petitioner has not demonstrated that the prosecutor's characterization that Petitioner had displayed "crocodile tears" during his testimony "so infected the trial with unfairness" that he was denied due process. *See Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643). Petitioner, therefore, is not entitled to relief with respect to this assertion of prosecutorial misconduct.

### c.        Vouching for BW

Finally, Petitioner contends that the prosecutor improperly vouched for BW's credibility during closing arguments. (Pet., ECF No. 1, PageID.63.) Specifically, Petitioner takes issue with the following statement made by the prosecutor: "Look at the believable evidence. Does it show guilt beyond a reasonable doubt? Absolutely. The young lady was telling you the truth and you believe her, submitted by the facts." (Trial Tr. III, ECF No. 25-10, PageID.1068.)

The Sixth Circuit has identified two types of objectionable vouching. *See United States v. Acosta*, 924 F.3d 288, 299 (6th Cir. 2019); *Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008). *But see Wogenstahl v. Mitchell*, 668 F.3d 307, 328–29 (6th Cir. 2012) (treating the two aspects of vouching as part of a single standard). The first type impermissibly places the government's prestige behind the witness to enhance his or her credibility. *See United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 2019); *United States v. Carroll*, 26 F.3d 1380, 1388–89 (6th Cir. 1994). The second type, also known as bolstering, occurs when the prosecutor invites the jury to believe there is other evidence, known to the prosecutor but not introduced into evidence, justifying the prosecutor's belief in the defendant's guilt. *See Francis*, 170 F.3d at 551; *United States v. Medlin*, 353 F.2d 789, 796 (6th Cir. 1965).

Moreover, a prosecutor may not "offer [his or her] opinions as to credibility of a witness or the guilt of a defendant." *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). As the Supreme Court has noted:

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*United States v. Young*, 470 U.S. 1, 18–19 (1985). However, not every reference to the credibility of a witness is objectionable vouching. "[A] prosecutor may ask the jury to draw reasonable inferences of credibility from the evidence presented." *Willoughby v. White*, 786 F. App'x 506, 513 (6th Cir. 2019).

Again, the court of appeals did not explicitly discuss Petitioner's vouching claim in its opinion, even though Petitioner mentioned his assertion in his *pro per* supplemental brief. (ECF No. 25-16, PageID.1356.) Presumably, by focusing solely on the prosecutor's characterization of Young as a "pimp," the court of appeals was of the opinion that the prosecutor did not vouch for BW's credibility.

Upon review of the record, the Court concludes that where the prosecutor noted that BW was telling the truth, the prosecutor tied that argument to the evidence offered at trial or reasonable inferences from that evidence. Petitioner fails to point to any part of the prosecutor's argument that suggests that the prosecutor invited the jurors to believe that BW was credible simply because the prosecutor believed that to be the case. Moreover, the prosecutor did not invite the jury to believe there was other evidence, known to the prosecutor but not introduced at trial, justifying a conclusion that BW was credible. Furthermore, at no time did the prosecutor place the prestige of the government behind BW to bolster her credibility.

The Court also notes that the trial court instructed the jury to consider only the evidence admitted at trial, and that counsel's closing arguments did not constitute evidence. (Trial Tr. III, ECF No. 25-10, PageID.1083.) A jury is presumed to follow its instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Petitioner has not demonstrated that the remarks made by the prosecutor during closing arguments "so infected the trial with unfairness" that he was denied due

process. *See Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643). Petitioner, therefore, is not entitled to relief with respect to this assertion of prosecutorial misconduct.

### d.      Summary

In sum, Petitioner has not shown that the prosecutor engaged in misconduct by referring to Young as a "pimp," by characterizing Petitioner as having "crocodile tears" during his testimony, or by impermissibly vouching for BW's credibility. Petitioner fails to demonstrate that the court of appeals' rejection of this claim of prosecutorial misconduct is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to habeas ground III.

### C.      Ground IV—Ineffective Assistance of Trial and Appellate Counsel

As his fourth ground for relief, Petitioner contends that trial and appellate counsel rendered ineffective assistance in various ways.

### 1.      Standard of Review

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the petitioner resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as

21

they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The *Strickland* standard that applies to trial counsel also applies to appellate counsel. However, a criminal appellant has no constitutional right to have every non-frivolous issue raised on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. And then scrutiny of the state court's

22

scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In light of

that double deference, the question before the habeas court is "whether there is any reasonable

argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d

723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the

difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing

*Harrington*, 562 U.S. at 102)).

Petitioner raised his claims of ineffective assistance in his Rule 6.500 motion, and the trial

court rejected them in a written opinion. In that opinion, the trial court recognized that Petitioner's

ineffective assistance claims were governed by the standard set forth in *Strickland*. (ECF No. 25-

14, PageID.1188.) The state court's application of the correct standard eliminates the possibility

that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court

stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different,"
> "opposite in character or nature," or "mutually opposed." Webster's Third New
> International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests
> that the state court's decision must be substantially different from the relevant
> precedent of this Court. The Fourth Circuit's interpretation of the "contrary to"
> clause accurately reflects this textual meaning. A state-court decision will certainly
> be contrary to our clearly established precedent if the state court applies a rule that
> contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not

"contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our
> cases to the facts of a prisoner's case would not fit comfortably within
> § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court
> decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland*
> [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and,
> applying that framework, rejects the prisoner's claim. Quite clearly, the state-court
> decision would be in accord with our decision in *Strickland* as to the legal
> prerequisites for establishing an ineffective-assistance claim, even assuming the
> federal court considering the prisoner's habeas application might reach a different
> result applying the *Strickland* framework itself. It is difficult, however, to describe

such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, Petitioner can only overcome the deference afforded state court decisions if the state court's determinations were based on an unreasonable application of *Strickland* or if the state court's resolutions were based on unreasonable determinations of the facts. 28 U.S.C. 2254(d).

### 2.  Ineffective Assistance of Trial Counsel

#### a.  Failing to Introduce Jail Calls

Petitioner first faults trial counsel for failing to introduce as evidence "phone recordings from [the] county jail." (Pet., ECF No. 1, PageID.10.) According to Petitioner, these recordings would have been material to his defense and "would have changed the outcome of trial." (*Id.*, PageID.79.) Petitioner suggests that had counsel introduced the recordings as evidence, the jury would have heard that Petitioner never stated "I broke into the house" or "I hope they don't fingerprint the door" in those recordings. (*Id.*)

Petitioner raised this claim in his Rule 6.500 motion, and the trial court rejected it, noting:

[Petitioner] further claims trial counsel was ineffective for his failure to introduce into evidence phone calls made by [Petitioner] from jail. [Petitioner] claims the phone calls were exculpatory. Unfortunately, [Petitioner] fails to realize that statements made by him from a jail phone recording that are exculpatory would generally not be admissible into evidence at trial. They are clearly classic hearsay and not admissible. MRE 802. Hearsay is a statement, other than one made by the declarant while testifying at the trial to prove the truth of the matter asserted. MRE 801. [Petitioner] took the stand and testified on his own behalf. He denied breaking into the victim's home or sexually assaulting her. Any phone calls he would have made to third parties that would be consistent with or bolster this defense/claim would be inadmissible hearsay. Those phone calls would not fall into a category of statements that are not classified as hearsay. MRE 801(d)(1) & (2). Nor would any recorded statements by [Petitioner] himself fall within a recognized exception to the hearsay rule. MRE 803. While those phone calls may have been admissible by the prosecution at trial against [Petitioner] if he had made inconsistent statements

while testifying, trying to bolster one's own testimony by making calls to third parties does not make them admissible at trial even if they are recorded by the jail. Otherwise, defendants could make countless calls from jail professing their innocence and then expect them to be admitted as substantive evidence of truth. That is not the case under our system of jurisprudence. That is not to say that a phone call from a defendant recorded from jail could not under appropriate facts and circumstances fall within a recognized hearsay exception under MRE 803, or not be considered hearsay at all if offered appropriately under MRE 801(d)(1)(B) or (C), but that is not the case under the facts of this case. [Petitioner] goes on to acknowledge in his own brief that two officers admitted while testifying, that in the phone recordings from the jail [Petitioner] never stated or admitted that he broke into the house. [Petitioner] got the evidence he wanted from the officers' own mouths while testifying at his trial, which bolstered his own trial testimony, and left the jury free to give what weight they wanted to that evidence. Since the recordings would not have been admissible at trial in the court's opinion, it cannot be ineffective assistance of trial counsel to have not tried to offer them into evidence. [Petitioner's] argument on this point is without merit.

(ECF No. 25-14, PageID.1186–1187.)

The trial court's conclusion that the recordings of the jail calls would not have been admissible forecloses Petitioner's ineffective assistance claim. Even if counsel had moved to introduce the recordings, the trial court would have excluded them as inadmissible hearsay. That determination binds this Court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). In that circumstance, Petitioner cannot show that counsel's failure to move for the introduction of the recordings prejudiced Petitioner in any way and, accordingly, he has failed to demonstrate that the trial court's rejection of this claim of ineffective assistance is an unreasonable application of *Strickland*. Petitioner, therefore, is not entitled to habeas relief with respect to this issue.

### b.    Incorrect Objection

Next, Petitioner faults trial counsel for objecting on the wrong grounds during the prosecutor's closing argument. Specifically, Petitioner asserts that counsel objected that there was "no evidence" of the jail phone recordings and what Petitioner had allegedly said in them admitted at trial, and that counsel should have actually objected that the prosecutor was arguing facts not in

evidence in order to preserve the argument for appeal. (Pet., ECF No. 1, PageID.84–85.) Petitioner also faults counsel for not "object[ing] to the latter two instances of improper comments by the prosecutor," as well as for not "request[ing] a curative instruction to remedy the situation." (*Id.*, PageID.86.)

During rebuttal argument, the prosecutor mentioned that in a jail phone call, Petitioner said, "I sure hope they don't fingerprint that door." (Trial Tr. III, ECF No. 25-10, PageID.1068.) Trial counsel objected, stating, "They never—they never—there was no evidence admitted about [Petitioner's] conversations in the jail." (*Id.*, PageID.1069.) The prosecutor responded, "Yes—yes, there was." (*Id.*) The trial court overruled the objection, stating that it was "up to the jury to rely on their memories about the facts." (*Id.*)

As discussed *supra*, the prosecutor committed error during closing arguments when he remarked that Petitioner said in a phone call from jail that he hoped the police did not fingerprint the door. *See Caldwell*, 2017 WL 5503781, at *2. The court of appeals concluded that the prosecutor's error did not affect the outcome of the proceedings, *id.*, and this Court has agreed with that determination.

Petitioner raised this claim in his Rule 6.500 motion, and the trial court rejected it in conjunction with Petitioner's claim of ineffective assistance of appellate counsel, stating:

> [Petitioner] seeks relief from judgment, claiming ineffective assistance of [a]ppellate [c]ounsel, premised on the fact appellate counsel set forth in argument that the prosecution at trial had "argued facts not in evidence" in rebuttal closing, when trial counsel had actually objected at trial on the grounds of "no evidence" being admitted at trial.
>
> The Court of Appeals addressed these differences and concluded that because trial counsel had objected on no evidence grounds, that appellate counsel's presented issue of arguing facts not in evidence was different and therefore insufficient to preserve an appellate attack. Based on *People v. Stimage*, 202 Mich. App. 28; 507 N.W.2d 778 (1993), the court reasoned that the issue of prosecutorial error was unpreserved. The court did however proceed to review the issue for plain error affecting [Petitioner's] substantial rights under *People v. Cooper*, 309 Mich. App.

74; 867 N.W.2d 452 (2015), and concluded the trial court had, following the objection, instructed the jury to, "rely on their memories about the facts" and in final instructions had informed the jury to only consider evidence that was properly admitted into evidence. Though acknowledging the prosecutor's remark in rebuttal closing was erroneous, the Court of Appeals relied on both the instructions given by the trial court and the "strong evidence of [Petitioner's] guilt" based on the cumulative testimony of multiple witnesses, to conclude that any error did not affect the outcome of the [Petitioner's] substantial rights.

. . .

In the case at hand the Court of Appeals opined that the issue appellate counsel argued was unpreserved. Under [Mich. Comp. Laws § 769.26] as well as case law, even if this issue had been properly preserved, the error in this court's opinion would have had negligible effect on the jury's verdict, if any. *See People v. Mateo*, 453 Mich. 203; 551 N.W.2d 891 (1996). More damning to [Petitioner's] case was the eyewitness testimony of the victim, the observations of the victim's mother, the items from the victim's bathroom found in the [Petitioner's] vehicle, and the conflicting stories [Petitioner] told police from denial of being at the victim's home to claiming later he had been invited in by the victim. To believe as [Petitioner] would have one believe, that somehow the comment in the prosecutor's rebuttal was paramount to the jury's decision, would require the finder of fact to totally discount the overwhelming weight of the other evidence that was introduced at trial against [Petitioner] and find it was of inconsequential value, which this court cannot do in good conscience.

. . .

In addition to alleging ineffective assistance of appellate counsel, [Petitioner] also alleges ineffective assistance of trial counsel, based on, *inter alia*, the same "no evidence," "facts not in evidence" argument. As this issue was addressed by the Court of Appeals in their affirmance and presumably reviewed by the Supreme Court in denying [Petitioner's] application for leave, based on the above, this court also determines this issue insufficient to warrant relief from judgment.

(ECF No. 25-14, PageID.1186–1186.)

Petitioner has offered no evidence, much less clear and convincing evidence, to overcome the presumption of correctness afforded to the trial court's factual findings. Petitioner fails to demonstrate that he was prejudiced in any way by counsel's failure to specifically argue "facts not in evidence" rather than objecting on the basis of "no evidence." Although counsel objected only to the first instance of error by the prosecution, Petitioner has not shown that any further objection

by counsel would have resulted in a different outcome. Moreover, the trial court instructed the jury that counsel's closing arguments did not constitute evidence (Trial Tr. III, ECF No. 25-10, PageID.1083), and the jury is presumed to have followed that instruction, *see Weeks*, 528 U.S. at 234. Given the overwhelming evidence against Petitioner, Petitioner simply fails to demonstrate that a differently-worded objection by counsel would have led to an acquittal. Because Petitioner has not demonstrated that the trial court's rejection of this claim of ineffective assistance was contrary to, or an unreasonable application of, *Strickland*, he is not entitled to habeas relief on this basis.

### c.   Advising Petitioner to Lie Under Oath

Finally, Petitioner faults counsel for advising him to lie under oath "regarding past crimes." (Pet., ECF No. 1, PageID.10.) Petitioner states that before he took the stand at trial, his attorney told him to answer "no" if the prosecutor asked Petitioner "about his criminal record or whether he has ever hurt a woman." (*Id.*, PageID.88.) Petitioner faults counsel for telling him that the prosecution could not ask about his prior criminal history. (*Id.*) According to Petitioner, "[n]o [d]efendant in their right mind, without their counsel's advice[,] would lie about having a criminal record under oath, in front of [the] prosecutor, when the courts could so easily access this for a jury to review." (*Id.*, PageID.89.) Petitioner avers that "[o]nce the jury knew that [he] had plead[ed] guilty to previous charges similar to the charges he was on trial for, along with having been impeached, [his] whole defense was useless." (*Id.*)

Petitioner raised this claim in his Rule 6.500 motion, and the trial court rejected it, stating:

On Wednesday June 15, 2016, [Petitioner] took the witness stand at 3:45 p.m., and after raising his right hand was administered the following oath. "Do you solemnly swear or affirm that the testimony you are about to give in this matter will be the truth, the whole truth, and nothing but the truth, so help you God?" (TT Vol. II, p. 183). [Petitioner's] response: "I do." *Id.* He now asks this court for a new trial because he took the witness stand with the specific intent to lie to the court and jury. How convenient. A defendant can now lie in open court and when caught

blame it on counsel, get a new trial, and by extension under [Petitioner's] claim, repeat the cycle until such time as he may be fortunate enough to find the right lie to convince a jury of his innocence to obtain an acquittal, at which point any retrial would be barred by double jeopardy. Not in my court. When a defendant takes the witness stand and swears to tell the truth in front of a judge, jury, and God, if he or she thereafter chooses to intentionally lie, then any consequences are borne by the defendant and are not grounds for a new trial. [Petitioner] had an absolute constitutional right to remain silent and not have his silence used against him and chose not to. U.S. Const. amend. V, Mich. Const. 1963 art. I, sec. 17. That right however does not extend to not having one's words or lies used against him/her if they choose to take the stand and testify. To permit a defendant to have a new trial for the reason he/she lied under oath, would make a mockery of our system of justice.

(ECF No. 25-14, PageID.1187.)

A criminal defendant's right to testify on his own behalf "is a fundamental right." *United States v. Stover*, 474 F.3d 904, 908 (6th Cir. 2007) (citing *Rock v. Arkansas*, 483 U.S. 44, 52–53 & n.10 (1987)). Counsel's role is to advise the defendant about whether to take the stand, but the final decision is left to the defendant. *Rock*, 483 U.S. at 551; *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983); *United States v. Teague*, 953 F.2d 1525, 1533 (11th Cir. 1992) (noting that "[d]efense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide").

"[A] defendant's right to testify[, however,] does not include a right to commit perjury." *United States v. Dunnigan*, 507 U.S. 87, 96 (1993). With respect to claims of ineffective assistance of counsel, several courts have held that counsel's failure to address the possibility of committing perjury or the consequences that could stem from doing so does not rise to the level of ineffective assistance. *See, e.g.*, *United States v. Evans*, Nos. 0:13-CR-22-DLB-REW, 0:17-CV-127-DLB-REW, 2018 WL 8334950, at *10 (E.D. Ky. June 1, 2018) (rejecting petitioner's claim of ineffective assistance for counsel' s failure to advise him about the consequences of committing perjury because the petitioner swore to tell the truth before testifying), *report and recommendation*

*adopted*, 2019 WL 1077371 (E.D. Ky. Mar. 7, 2019); *United States v. Wilkes*, Nos. 07cr330-LAB, 15cv2841-LAB, 2017 WL 6344799, at \*11 n.8 (S.D. Cal. Dec. 12, 2017) ("Even assuming that [counsel] failed to warn Wilkes not to lie under oath, this doesn't amount to ineffective assistance or anything like it. All witnesses in all cases—most of whom are not represented by counsel at all—are on notice that they must tell the truth; the oath itself is sufficient to convey that."); *Stevens v. United States*, Nos. CV414-014, CR411-199, 2014 WL 7405470, at \*3 (S.D. Ga. Dec. 29, 2014) ("Stevens blames his attorney for failing to advise him that it was a bad idea to lie under oath to a court of law. That's just laughable."); *Montas v. United States*, Nos. 8:11-cv-849-T-27TGW, 8:08-cr-271-T-27TGW, 2012 WL 5193413, at \*5 (M.D. Fla. Oct. 19, 2012) ("Petitioner took an oath before testifying at the sentencing hearing averring that he would testify truthfully. Counsel's failure to mention the possibility of an obstruction enhancement under these circumstances does not rise to the level of ineffective assistance."); *United States v. Kelly*, Nos. 2:09-36-DCR, 2:12-7226-DCR, 2012 WL 4955193, at \*10 n.6 (E.D. Ky. Oct. 17, 2012) ("An attorney is not ineffective for failing to advise a defendant not to lie under oath."); *Robertson v. United States*, 144 F. Supp. 2d 58, 67–68 (D.R.I. 2001) (concluding that counsel was not ineffective for failing to advise the defendant that, if his testimony was found to be false, his sentence could be enhanced for obstruction of justice because the oath administered to the defendant informed him of his obligation to testify truthfully).

Likewise, courts have rejected ineffective assistance of counsel claims premised upon the petitioner's assertion that counsel affirmatively told him or her to commit perjury. *See, e.g.*, *Harris v. United States*, No. 17-3781, 2018 WL 509717, at \*1 (6th Cir. Jan. 4, 2018) (affirming the rejection of petitioner's claim that counsel told her to lie about her substance abuse issues when she pleaded guilty to Hobbs Act robbery); *Brewer v. Aiken*, 935 F.2d 850, 859–60 (7th Cir. 1991)

("The purpose of the rule against presenting false evidence is to protect the integrity of the truth-finding function of courts rather than the rights of the defendant. The rule protects the public from allowing defendants to subvert the criminal justice system through fabricating evidence. . . . It would be absurd to create a rule allowing a defendant to go free if perjured testimony succeeds while at the same time providing for a new trial if the witness is a poor liar."); *Ingram v. United States*, Nos. 3:13-CR-45-TAV-DCP-9, 3:15-CV-334-TAV, 2018 WL 3717101, at *5 (E.D. Tenn. Aug. 3, 2018) (rejecting petitioner's claim that counsel suborned perjury by telling the petitioner to lie in open court and plead guilty to possession of a firearm in furtherance of a drug trafficking offense); *Hall v. Rivard*, No. 2:10-cv-11252, 2016 WL 1258990, at *9 (E.D. Mich. Mar. 31, 2016) (rejecting petitioner's claim that attorney advised him to take the stand and falsely testify that he did not fire a gun on the night in question); *Monegro v. Greiner*, No. 03 Civ. 2735 (NRB), 2004 WL 187129, at *6 (S.D.N.Y. 2004) ("Even if petitioner did commit perjury on his counsel's advice, we would decline to create a rule that such misconduct amounts to a ground for reversing a conviction, particularly as petitioner does not allege that counsel in any way coerced him.").

Here, Petitioner relies only upon his self-serving statements to support his claim; he provides no evidence to support his assertion that counsel advised Petitioner to commit perjury and lie about his past criminal history. Moreover, Petitioner points to no clearly established federal law—i.e., Supreme Court decisions—holding that counsel commits ineffective assistance by advising a client to commit perjury. While the Court does not condone trial counsel advising clients to lie on the stand, Petitioner has not demonstrated that the trial court's rejection of this ground for relief is contrary to, or an unreasonable application of, *Strickland*. The record reflects that before Petitioner took the stand, counsel requested a brief recess so that he could discuss with Petitioner whether Petitioner was willing to testify. (Trial Tr. II, ECF No. 25-9, PageID.932.) After that brief

recess, Petitioner was administered the oath, and he swore to tell the truth pursuant to that oath. (*Id.*) On cross-examination, Petitioner maintained that he had never assaulted WAB and had never hurt a woman. He suggested that when he had pleaded guilty to assaulting WAB, he had been forced to lie to the court. (*Id.*, PageID.974.)

Even if Petitioner testified falsely pursuant to counsel's advice, he fails to demonstrate prejudice from his decision to do so. Prior to Petitioner taking the stand, the jury had already heard testimony from WAB concerning how she had previously been assaulted by Petitioner in a manner similar to the assault committed against BW. Moreover, Petitioner was on notice, via the oath, that he must tell the truth and yet, despite agreeing to do so, steadfastly maintained that he had never hurt or assaulted a woman in his life. Petitioner himself is ultimately to blame for giving incorrect testimony at trial. Furthermore, as already discussed, substantial evidence supported Petitioner's conviction for assaulting BW, and Petitioner has offered nothing to suggest that the outcome of his trial would have differed had he testified truthfully. Because Petitioner has not demonstrated that the trial court's rejection of this claim of ineffective assistance was contrary to, or an unreasonable application of, *Strickland*, he is not entitled to habeas relief on this basis.

### 3. Ineffective Assistance of Appellate Counsel

Finally, Petitioner faults appellate counsel for "arguing on [d]irect [a]ppeal the wrong issue," which caused Petitioner to "[w]aive[] this issue and hav[e] to file a 6.500 motion." (Pet., ECF No. 1, PageID.10.) Petitioner also faults appellate counsel for not raising his ineffective assistance of trial counsel claims. (*Id.*)

First, Petitioner asserts that appellate counsel "argued on appeal the wrong issue that defense counsel objected to at trial." (*Id.*, PageID.72.) Specifically, Petitioner refers to the fact that appellate counsel raised the issue of the prosecution "arguing facts not in evidence." (*Id.*) Petitioner suggests that "[t]he objected to issue of 'no evidence' being admitted at trial was waived because

it wasn't raised by appellate counsel properly." (*Id.*, PageID.73.) According to Petitioner, appellate counsel "only identified one instance in which the prosecution made [a] false comment" and failed to supply the three alleged instances where the prosecutor made the false comment during closing arguments. (*Id.*)

Petitioner raised this argument in his Rule 6.500 motion, and the trial court rejected it, as set forth *supra* in Part IV.C.2.b regarding Petitioner's related claim of ineffective assistance of trial counsel. Although appellate counsel raised a different argument on direct appeal than the argument asserted by trial counsel, the record before this Court clearly shows that the court of appeals addressed the argument Petitioner asserts appellate counsel should have raised. Here, Petitioner simply reiterates the arguments he raised in his Rule 6.500 motion—arguments that have already been rejected by the state courts. Moreover, as discussed *supra*, Petitioner's underlying claim of prosecutorial misconduct lacks merit, as Petitioner fails to demonstrate that the outcome of his trial would have been different absent the prosecutor's error. Petitioner provides no evidence, much less clear and convincing evidence, to overcome of presumption of correctness afforded to the trial court's factual findings regarding appellate counsel's performance. *See* 28 U.S.C. § 2254(e)(1); *Davis*, 658 F.3d at 531. Petitioner, therefore, is not entitled to relief with respect to this assertion of ineffective assistance of appellate counsel.

With respect to Petitioner's contention that appellate counsel failed to raise his ineffective assistance of trial counsel claims, the trial court summarily rejected Petitioner's argument in its opinion denying Petitioner's Rule 6.500 motion, noting that appellate counsel was not ineffective because trial counsel did not render ineffective assistance. (ECF No. 25-14, PageID.1186–1188.) As thoroughly discussed *supra*, Petitioner's claims of ineffective assistance of trial counsel lack merit. Accordingly, appellate counsel's failure to raise such claims "on direct appeal cannot be

deemed constitutionally deficient performance." *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003); *see also Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("If trial counsel performed adequately, our inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."). Petitioner has not demonstrated that the trial court's rejection of his ineffective assistance of appellate counsel claim is contrary to, or an unreasonable application of, *Strickland*.

### 4.    Summary

In sum, Petitioner has not demonstrated that the trial court's rejection of his various ineffective assistance claims is contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief with respect to habeas ground IV.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v.*

*Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## <u>Conclusion</u>

The Court will enter a judgment denying the petition and an order denying a certificate of appealability.

Dated: March 29, 2024                    /s/ Hala Y. Jarbou
                                        HALA Y. JARBOU
                                        CHIEF UNITED STATES DISTRICT JUDGE